## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLUE SPIKE LLC<br><br>    Plaintiff,<br><br> v.<br><br>DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.,<br><br><br>    Defendants. | **Civil Action No. 1:18-CV-01512-LPS**<br><br><br>**JURY TRIAL DEMANDED** |

### FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Blue Spike LLC ("Blue Spike" or "Plaintiff"), for its First Amended Complaint against Defendants Dish Network Corporation, Dish Network L.L.C., and Dish Network Service L.L.C, (referred to collectively herein as "Dish" or "Defendant"), alleges the following:

### NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

### THE PARTIES

2. Plaintiff Blue Spike is a limited liability company organized under the laws of the State of Texas with a place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703.

3. Upon information and belief, Defendant Dish Network Corporation is a corporation established under the laws of the State of Nevada, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112. Defendant can be served through

its registered agent, CSC Services of Nevada, Inc., located at 2215-B Renaissance Drive, Las Vegas, Nevada 89119.

4.     Upon information and belief Defendant Dish Network L.L.C. is established under the laws of the State of Colorado, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112. Defendant can be served through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

5.     Upon information and belief Defendant Dish Network Service L.L.C. established under the laws of the State of Colorado, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112. Defendant can be served through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

6.     Upon information and belief, Dish sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

7.     This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

8.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

9.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b). Moreover, pursuant to the joint motion to transfer filed on September 4, 2018, the parties agreed on transfer of venue to this District.

10.     This Court has personal jurisdiction over Dish under the laws of the State of Delaware, due at least to their substantial business in Delaware and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Delaware.  Further, this Court has personal jurisdiction and proper authority to exercise venue over Dish because both defendants are incorporated in Delaware and by doing so has purposely availed itself of the privileges and benefits of the laws of the State of Delaware.

## BACKGROUND

### THE '246, '295, AND '408 PATENTS

#### The Invention

11.     Scott A. Moskowitz and Michael Berry are the inventors of U.S. Patent Nos. 7,475,246 ("the '246 Patent").  A true and correct copy of the '246 Patent is attached as Exhibit A.

12.     Scott A. Moskowitz and Michael Berry are the inventors of U.S. Patent Nos. 8,739,295 ("the '295 Patent").  A true and correct copy of the '295 Patent is attached as Exhibit B.

13.     Scott A. Moskowitz is the inventor of U.S. Patent No. 9,934,408 (the '408 Patent").  A true and correct copy of the '408 Patent is attached to Exhibit C.

14.     The '246, '295, and '408 Patents resulted from the pioneering efforts of Messrs. Moskowitz and Berry (for the purposes of this section, "the Inventors") in the area of secure distribution of digitized value-added information, or media content, while preserving the ability of publishers to make available unsecured versions of the same value-added information, or media content, without adverse effect to the systems security.  These efforts resulted in the

secure personal content server memorialized in mid-2000. At the time of these pioneering efforts, the most widely implemented technology used to address unauthorized copying and distribution of digital content was focused solely on cryptography. In that type of system, content could be encrypted, but there was no association between the encryption and the actual content. This meant that there could be no efficient and openly accessible market for tradable information. The Inventors conceived of the inventions claimed in the '246, '295, and '408 Patents as a way to separate transactions from authentication in the sale of digitized data.

15.     For example, the Inventors developed methods and systems which enable secure, paid exchange of value-added information, while separating transaction protocols. The methods and systems improve on existing means for distribution control by relying on authentication, verification and authorization that may be flexibly determined by both buyers and sellers. These determinations may not need to be predetermined, although pricing matrix and variable access to the information opens additional advantages over the prior art. The present invention offers methods and protocols for ensuring value-added information distribution can be used to facilitate trust in a large or relatively anonymous marketplace (such as the Internet's World Wide Web).

**Advantage Over the Prior Art**

16.     The patented inventions disclosed in the '246 Patent, the '295 Patent, and the '408 Patents provide many advantages over the prior art, and in particular improved the operations of secure personal content servers. *E.g.*, Exhibit A, '246 Patent at 2:24–64; Exhibit B, '295 Patent at 2:39–65; Exhibit C, '408 Patent at 2:55–3:15. One advantage of the patented invention is the handling of authentication, verification, and authorization with a combination of cryptographic and steganographic protocols to achieve efficient, trusted, secure exchange of digital

information.  *E.g.*, Exhibit A, '246 Patent at 1:53–56; Exhibit B, '295 Patent at 1:27–30; Exhibit C, '408 Patent at 1:42–45.

17.     Another advantage of the patented invention is leveraging the benefits of digital information (such as media content) to consumers and publishers, while ensuring the development and persistence of trust between all parties.  *E.g.*, Exhibit A, '246 Patent at 3:16–30; Exhibit B, '295 Patent at 3:32–47; Exhibit C, '408 Patent at 3:49–64.

18.     Another advantage of the patented invention is the separation and independent quantification of interests and requirements of different parties to a transaction by market participants in shorter periods of time.  *E.g.*, Exhibit A, '246 Patent at 3:32–51; Exhibit B, '295 Patent at 3:47–67; Exhibit C, '408 Patent at 3:65–4:18.

19.     Because of these significant advantages that can be achieved through the use of the patented invention, Blue Spike believes that the '246 Patent, '295 Patent, and the '408 Patents present significant commercial value for companies like Dish.  Indeed, the technology described and claimed in the '246 and '295 Patents reads on the core functionality of Dish's Hopper and satellite TV products and services.

**<u>Technological Innovation</u>**

20.     The patented invention disclosed in the '246 Patent, '295 Patent, and the '408 Patent resolves technical problems related to the secure distribution of digitized value-added information, or media content, while preserving the ability of publishers to make available unsecured versions of the same value-added information, or media content, without adverse effect to the systems security.  As the '246 and '295 Patents explain, one of the limitations of the prior art as regards the secure distribution of digitized value-add information or media content was that content could be encrypted, but there was no association between the encryption and the

actual content. This meant that there could be no efficient and openly accessible market for tradable information. *See* Exhibit A, '246 Patent at 1:48–56; Exhibit B, '295 Patent at 1:22–26.

21.     The claims of the '246 Patent, '295 Patent, and the '408 Patents do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the internet. Instead, the claims of the '246 Patent, '295 Patent, and the '408 Patents recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of how to secure distribution of digitized value-added information, or media content, while preserving the ability of publishers to make available unsecured versions of the same value-added information, or media content, without adverse effect to the systems security.

22.     In addition, the claims of the '246 Patent, '295 Patent, and the '408 Patents recite inventive concepts that improve the functioning of secure personal content servers, particularly varying quality levels in a manner designed to improve security.

23.     Moreover, the claims of the '246 Patent, '295 Patent, and the '408 Patents recite inventive concepts that are not merely routine or conventional use of computer components. Instead, the patented invention disclosed in the '246 Patent, '295 Patent, and the '408 Patents provides a new and novel solution to specific problems related to improving secure distribution of digitized value-added information, or media content, while preserving the ability of publishers to make available unsecured versions of the same value-added information, or media content, without adverse effect to the systems security.

24.     And finally, the patented invention disclosed in the '246 Patent, '295 Patent, and the '408 Patents does not preempt all the ways that secure distribution of digitized value-added information, or media content, while preserving the ability of publishers to make available

unsecured versions of the same value-added information, or media content, without adverse effect to the systems security may be used to improve the personal content servers, nor do the '246 Patent, '295 Patent, and the '408 Patents preempt any other well-known or prior art technology.

25. Accordingly, the claims in the '246 Patent, '295 Patent, and the '408 Patents recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

**Prior Litigation**

26. The '246 Patent was previously litigated in the Northern District of California: 5:17-cv-04780.

27. The '246 Patent was previously litigated in the Central District of California: 2:17-cv-05656.

28. The '246 Patent was previously litigated in the Eastern District of Texas: 6:18-cv-00223 (E.D. Tex.); 6:18-cv-00174 (E.D. Tex.); 6:18-cv-00242 (E.D. Tex.); 6:17-cv-00138 (E.D. Tex.); 6:17-cv-00063 (E.D. Tex.); 6:17-cv-00096 (E.D. Tex.); 6:17-cv-00099 (E.D. Tex.); 6:17-cv-00175 (E.D. Tex.); 6:17-cv-00053 (E.D. Tex.); 6:17-cv-00101 (E.D. Tex.); 2:16-cv-00329 (E.D. Tex.); 6:17-cv-00060 (E.D. Tex.); 6:17-cv-00100 (E.D. Tex.); 6:17-cv-00097 (E.D. Tex.); 6:17-cv-00098 (E.D. Tex.).

29. Collectively, these cases may be referred to as the "Prior '246 Patent Litigation."

30. The scope and construction of the claims of the '246 Patent have been clarified by the Prior Litigation.

31. The '295 Patent was previously litigated in the Northern District of California:

5:17-cv-04780.

32.     The '295 Patent was previously litigated in the Central District of California: 2:17-cv-05656.

33.     The '295 Patent was previously litigated in the Eastern District of Texas: 6:18-cv-00223 (E.D. Tex.); 6:18-cv-00174 (E.D. Tex.); 6:18-cv-00242 (E.D. Tex.); 6:17-cv-00138 (E.D. Tex.); 6:17-cv-00063 (E.D. Tex.); 6:17-cv-00096 (E.D. Tex.); 6:17-cv-00099 (E.D. Tex.); 6:17-cv-00175 (E.D. Tex.); 6:17-cv-00053 (E.D. Tex.); 6:17-cv-00101 (E.D. Tex.); 2:16-cv-00329 (E.D. Tex.); 6:17-cv-00060 (E.D. Tex.); 6:17-cv-00100 (E.D. Tex.); 6:17-cv-00097 (E.D. Tex.); 6:17-cv-00098 (E.D. Tex.).

34.     Collectively, these cases may be referred to as the "Prior '295 Patent Litigation."

35.     The scope and construction of the claims of the '295 Patent have been clarified by the Prior Litigation.

36.     The '408 Patent was previously litigated in the Eastern District of Texas: 6:18-cv-00223 (E.D. Tex.); 6:18-cv-00174 (E.D. Tex.); 6:18-cv-00242 (E.D. Tex.).

37.     Collectively, these cases may be referred to as the "Prior '408 Patent Litigation."

38.     The scope and construction of the claims of the '408 Patent have been clarified by the Prior Litigation.

## THE '116 AND '011 PATENTS

### The Invention

39.     Scott A. Moskowitz is the inventor of U.S. Patent Nos. 7,159,116 ("the '116 Patent"). A true and correct copy of the '116 Patent is attached as Exhibit D.

40.     Scott A. Moskowitz is the inventor of U.S. Patent Nos. 8,538,011 ("the '011 Patent"). A true and correct copy of the '011 Patent is attached as Exhibit E.

41.     The '116 Patent and the '011 Patent resulted from the pioneering efforts of Mr. Moskowitz (hereinafter "the Inventor") in the area of transferring information between parties. These efforts resulted in the development of systems, methods, and devices for trusted transactions memorialized in mid-2000. At the time of these pioneering efforts, the most widely implemented technology used to address the difficulty of providing to a prospective acquirer of good or services full, accurate, and verifiable information regarding the nature, value, authenticity, and other suitability-related characteristics of the product in question. In that type of system, reciprocal and non-reciprocal systems could use non-secret algorithms to provide encryption and decryption. The Inventors conceived of the inventions claimed in the '116 and '011 Patents as a way to enhance trust on the part of participants in the transaction.

42.     For example, the Inventors developed methods and systems which enhance trust in transactions in connection with sophisticated security, scrambling, and encryption technology by, for example, steganographic encryption, authentication, and security means.

**Advantage Over the Prior Art**

43.     The patented inventions disclosed in the '116 Patent and the '011 Patents provide many advantages over the prior art, and in particular improved the operations of transaction devices. *E.g.*, Exhibit D, '116 Patent at 3:38–7:67; Exhibit E, '011 Patent at 3:42–7:60. One advantage of the patented invention is the handling of authentication, verification, and authorization with a combination of cryptographic and steganographic protocols to achieve efficient, trusted, secure exchange of digital information. *E.g.*, Exhibit D, '116 Patent at 3:46–51; Exhibit D, '011 Patent at 3:50–57.

44.     Another advantage of the patented invention is leveraging the benefits of digital information (such as media content) to consumers and publishers, while ensuring the

development and persistence of trust between all parties. *E.g.*, Exhibit D, '116 Patent at 3:16–30.

45.     Another advantage of the patented invention is the integration of system components, optimally requiring comparatively little processing resources so as to maximize its usefulness and minimize its cost. *E.g.*, Exhibit D, '116 Patent at 3:52–55; Exhibit E, '11 Patent at 3:53–57.

46.     Because of these significant advantages that can be achieved through the use of the patented invention, Blue Spike believes that the '116 Patent and '011 Patents present significant commercial value for companies like Dish. Indeed, the technology described and claimed int the '116 and '011 Patents reads on the core security functionality of Dish's downloadable apps.

### Technological Innovation

47.     The patented invention disclosed in the '116 and '011 Patents resolves technical problems related to transferring information between parties, particularly problems related to the utilization of sophisticated security, scrambling, and encryption technology by, for example, steganographic encryption, authentication, and security means. As the '116 and '011 Patents explain, one of the limitations of the prior art as regards the technical problems related to transferring information between parties was the difficulty of providing to a prospective acquirer of good or services full, accurate, and verifiable information regarding the nature, value, authenticity, and other suitability-related characteristics of the product in question. In that type of system, reciprocal and non-reciprocal systems could use non-secret algorithms to provide encryption and decryption. *See* Exhibit D, '116 Patent at 2:53–3:35; Exhibit E, '011 Patent at 2:57–3:38.

48.     The claims of the '116 and '011 Patents do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '116 and '011 Patents recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of how to enhance trust on the part of participants in the transaction.

49.     In addition, the claims of the '116 and '011 Patent recites inventive concepts that improve the functioning of devices for conducting trusted transactions, particularly by creating a bridge between mathematically determinable security and analog or human measure of trust.

50.     Moreover, the claims of the '116 and '011 Patents recite inventive concepts that are not merely routine or conventional use of computer components.  Instead, the patented invention disclosed in the '116 and '011 Patents provides a new and novel solution to specific problems related to enhancing trust on the part of participants in a transaction.

51.     And finally, the patented inventions disclosed in the '116 and '011 Patents do not preempt all the ways that enhancing trust on the part of participants in a transaction may be used to improve devices for trusted transactions, nor do the '116 and '011 Patents preempt any other well-known or prior art technology.

52.     Accordingly, the claims in the '116 and '011 Patents recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

**<u>Prior Litigation</u>**

53.     The '116 Patent was previously litigated in the Northern District of California: 5:18-cv-03392; 5:17-cv-04780.

54.     The '116 Patent was previously litigated in the Central District of California:

2:18-cv-05026; 2:18-cv-03970; 2:18-cv-05396.

55.     The '116 Patent was previously litigated in the Eastern District of Texas: 6:18-cv-00382 (E.D. Tex.); 6:18-cv-00381 (E.D. Tex.); 6:18-cv-00223 (E.D. Tex.); 6:18-cv-00174 (E.D. Tex.); 6:18-cv-00242 (E.D. Tex.); 6:17-cv-00016; 6:16-cv-01384 (E.D. Tex.); 6:17-cv-00063 (E.D. Tex.); 6:17-cv-00096; (E.D. Tex.); 6:17-cv-00099 (E.D. Tex.); 6:17-cv-00053 (E.D. Tex.); 6:17-cv-00101 (E.D. Tex.); 17-cv-00060 (E.D. Tex.); 6:17-cv-00100 (E.D. Tex.); 6:17-cv-00097 (E.D. Tex.); 6:17-cv-00098 (E.D. Tex.).

56.     Collectively, these cases may be referred to as the "Prior '116 Patent Litigation."

57.     The scope and construction of the claims of the '116 Patent have been clarified by the Prior Litigation.

58.     The '011 Patent was previously litigated in the Northern District of California: 5:17-cv-04780.

59.     The '011 Patent was previously litigated in the Central District of California: 2:17-cv-05656.

60.     The '011 Patent was previously litigated in the Eastern District of Texas: 6:18-cv-00223 (E.D. Tex.); 6:18-cv-00174 (E.D. Tex.); 6:18-cv-00242 (E.D. Tex.); 6:17-cv-00138 (E.D. Tex.); 6:17-cv-00063 (E.D. Tex.); 6:17-cv-00096 (E.D. Tex.); 6:17-cv-00099 (E.D. Tex.); 6:17-cv-00175 (E.D. Tex.); 6:17-cv-00053 (E.D. Tex.); 6:17-cv-00101 (E.D. Tex.); 6:17-cv-00060 (E.D. Tex.); 6:17-cv-00100 (E.D. Tex.); 6:17-cv-00097 (E.D. Tex.); 6:17-cv-00098 (E.D. Tex.).

61.     Collectively, these cases may be referred to as the "Prior '011 Patent Litigation."

62.     The scope and construction of the claims of the '011 Patent have been clarified by the Prior Litigation.

## THE '602 AND '842 PATENTS

### The Invention

63.     Scott A. Moskowitz is the inventor of U.S. Patent No. 9,021,602 ("the '602 Patent").  A true and correct copy of the '602 Patent is attached as Exhibit F.

64.     Scott A. Moskowitz is the inventor of U.S. Patent No. 9,104,842 ("the '842 Patent").  A true and correct copy of the '842 Patent is attached as Exhibit G.

65.     The '602 Patent and the '842 Patent resulted from the pioneering efforts of Mr. Moskowitz (for the purposes of this section, "the Inventor") in the area of protection of digital information.  These efforts resulted in the development of systems, methods, and devices for data protection memorialized in the mid-2000s.  At the time of these pioneering efforts, the most widely implemented technology used to address the difficulty of protecting intellectual property was copy protection.  In that type of system, however, the cost of developing such protection was not justified considering the level of piracy that occurred despite the copy protection.  The Inventor conceived of the inventions claimed in the '602 and '842 Patents as a way to combine transfer functions with predetermined key creation.

66.     For example, the Inventor developed systems and methods that protect digital information by identifying and encoding a portion of the format information.  Encoded digital information, including the digital sample and the encoded format information, is generated to protect the original digital information.

### Advantage Over the Prior Art

67.     The patented inventions disclosed in the '602 Patent and the '842 Patents provide many advantages over the prior art, and in particular improved the operations of digital content generation and/or display devices.  *E.g.*, Exhibit F, '602 Patent at 7:22–40; Exhibit G, '842

Patent at 7:20–38. One advantage of the patented invention is the provision of a level of security for executable code on similar grounds as that which can be provided for digitized samples. *E.g.*, Exhibit F, '602 Patent at 7:22–29; Exhibit G, '842 Patent at 7:20–27.

68.     Another advantage of the patented invention is that it does not attempt to stop copying, but rather, determines responsibility for a copy by ensuring that licensing information must be preserved in descendant copies from an original. Without the correct license information, the copy cannot function. *E.g.*, Exhibit F, 602 Patent at 7:22–29; Exhibit G, '842 Patent at 7:20–27.

69.     Because of these significant advantages that can be achieved through the use of the patented invention, Blue Spike believes that the '602 Patent and '842 Patents present significant commercial value for companies like Dish. Indeed, the technology described and claimed int the '602 and '842 Patents reads on the core security functionality of Dish's digital security in its Hopper and satellite TV products and services.

**Technological Innovation**

70.     The patented invention disclosed in the '602 and '842 Patents resolves technical problems related to protection of digital information particularly problems related to a method and device for data protection. As the '602 and '842 Patents explain, one of the limitations of the prior art as regards the protection of digital information was that existing methods of copy protection were too expensive and/or required outside determination and verification of the license. *See* Exhibit F, '602 Patent at 2:47–4:48; Exhibit G, '842 Patent at 1:29–60.

71.     The claims of the '602 and '842 Patents do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the '602 and '842 Patents recite inventive

concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of protecting digital information in a highly distributed computing environment.

72.     In addition, the claims of the '602 and '842 Patent recites inventive concepts that improve the functioning of devices for protecting digital information, particularly by combining transfer functions with predetermined key creation.

73.     Moreover, the claims of the '602 and '842 Patents recite inventive concepts that are not merely routine or conventional use of computer components. Instead, the patented invention disclosed in the '602 and '842 Patents provides a new and novel solution to specific problems related to protecting digital information.

74.     And finally, the patented inventions disclosed in the '602 and '842 Patents do not preempt all the ways that protecting digital information may be used to improve devices for data protection, nor do the '602 and '842 Patents preempt any other well-known or prior art technology.

75.     Accordingly, the claims in the '602 and '842 Patents recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

**Prior Litigation**

76.     The '602 Patent was previously litigated in the Northern District of California: 5:18-cv-03392.

77.     The '602 Patent was previously litigated in the Eastern District of Texas: 6:18-cv-00223 (E.D. Tex.); 6:18-cv-00174 (E.D. Tex.); 6:18-cv-00242 (E.D. Tex.); 6:17-cv-00016.

78.     Collectively, these cases may be referred to as the "Prior '602 Patent Litigation."

79.     The scope and construction of the claims of the '602 Patent have been clarified by

the Prior Litigation.

80.     The '842 Patent was previously litigated in the Northern District of California: 5:18-cv-03392.

81.     The '842 Patent was previously litigated in the Eastern District of Texas: 6:18-cv-00223 (E.D. Tex.); 6:18-cv-00174 (E.D. Tex.); 6:18-cv-00242 (E.D. Tex.); 6:17-cv-00016.

82.     Collectively, these cases may be referred to as the "Prior '842 Patent Litigation."

83.     The scope and construction of the claims of the '842 Patent have been clarified by the Prior Litigation.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,475,246

84.     The allegations set forth in the foregoing paragraphs 1 through 83 are incorporated into this First Claim for Relief.

85.     On January 6, 2009, the '246 Patent was duly and legally issued by the United States Patent and Trademark Office under the title "Secure Personal Content Server."

86.     Blue Spike is the assignee and owner of the right, title and interest in and to the '246 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

87.     Upon information and belief, Dish has and continues to directly infringe one or more claims of the '246 Patent by selling, offering to sell, using, and/or providing and causing to be used products, specifically one or more Hopper, Hopper Duo, Hopper with Sling, Hopper 3, Wally, and/or Joey Receivers (the "Accused Instrumentalities").  (*See* Ex. 1.)

88.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '246 Patent during the pendency of the '246 Patent. *See* '246 Patent Claim Chart, attached hereto as Exhibit H. Plaintiff notes that the '246 Claim Chart and analysis constitute a preliminary and exemplary infringement analysis based on publicly available information.

Plaintiff has not obtained discovery from Defendant, nor has Defendant disclosed any analysis in support of any purported non-infringement positions. Plaintiff hereby specifically reserves the right to supplement and/or amend the positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Plaintiff during the pendency of litigation, including information adduced through fact discovery, claim construction, expert discovery, and/or further analysis.

89.     Upon information and belief, since at least the time of receiving the Original Complaint, Dish has induced and continues to induce others to infringe at least claim 1 of the '246 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Dish's partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '246 Patent.

90.     In particular, Dish's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities. On information and belief, the Dish has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Dish has had actual knowledge of the '246 Patent and that its acts were inducing infringement of the '246 Patent since at least the time of receiving the Original Complaint.

91.     On information and belief, Dish's infringement has been and continues to be willful.

92.     Blue Spike has been harmed by Dish's infringing activities.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,739,295

93.     The allegations set forth in the foregoing paragraphs 1 through 92 are incorporated into this Second Claim for Relief.

94.     On May 27, 2014, the '295 Patent was duly and legally issued by the United States Patent and Trademark Office under the title "Secure Personal Content Server."

95.     Blue Spike is the assignee and owner of the right, title and interest in and to the '295 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

96.     Upon information and belief, Dish has and continues to directly infringe one or more claims of the '295 Patent by selling, offering to sell, using, and/or providing and causing to be used products, specifically one or more Hopper, Hopper Duo, Hopper with Sling, Hopper 3, Wally, and/or Joey Receivers (the "Accused Instrumentalities").   (*See* Ex. 1.)

97.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '295 Patent during the pendency of the '295 Patent.  *See* '295 Patent Claim Chart, attached hereto as Exhibit I.  Plaintiff notes that the '295 Claim Chart and analysis constitute a preliminary and exemplary infringement analysis based on publicly available information. Plaintiff has not obtained discovery from Defendant, nor has Defendant disclosed any analysis in support of any purported non-infringement positions.  Plaintiff hereby specifically reserves the right to supplement and/or amend the positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Plaintiff during the pendency of litigation, including information adduced through fact discovery, claim construction, expert discovery, and/or further analysis.

98.     Upon information and belief, since at least the time of receiving the Original Complaint, Dish has induced and continues to induce others to infringe at least claim 1 of the '295 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Dish's partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '295 Patent.

99.     In particular, Dish's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities. On information and belief, the Dish has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Dish has had actual knowledge of the '295 Patent and that its acts were inducing infringement of the '295 Patent since at least the time of receiving the Original Complaint.

100.    On information and belief, Dish's infringement has been and continues to be willful.

101.    Blue Spike has been harmed by Dish's infringing activities.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,934,408

102.    The allegations set forth in the foregoing paragraphs 1 through 101 are incorporated into this Third Claim for Relief.

103.    On April 3, 2018, the '408 Patent was duly and legally issued by the United States Patent and Trademark Office under the title "Secure Personal Content Server."

104.    Blue Spike is the assignee and owner of the right, title and interest in and to the '408 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

105.   Upon information and belief, Dish has and continues to directly infringe one or more claims of the '408 Patent by selling, offering to sell, using, and/or providing and causing to be used products, specifically one or more Hopper, Hopper Duo, Hopper with Sling, Hopper 3, Wally, and/or Joey Receivers (the "Accused Instrumentalities").   (*See* Ex. 1.)

106.   The Accused Instrumentalities infringed and continue to infringe claim 1 of the '408 Patent during the pendency of the '408 Patent.  *See* '408 Patent Claim Chart, attached hereto as Exhibit J.  Plaintiff notes that the '408 Claim Chart and analysis constitute a preliminary and exemplary infringement analysis based on publicly available information. Plaintiff has not obtained discovery from Defendant, nor has Defendant disclosed any analysis in support of any purported non-infringement positions.  Plaintiff hereby specifically reserves the right to supplement and/or amend the positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Plaintiff during the pendency of litigation, including information adduced through fact discovery, claim construction, expert discovery, and/or further analysis.

107.   Upon information and belief, since at least the time of receiving the Original Complaint, Dish has induced and continues to induce others to infringe at least claim 1 of the '408 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Dish's partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '408 Patent.

108.   In particular, Dish's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials

and/or services related to the Accused Instrumentalities. On information and belief, the Dish has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Dish has had actual knowledge of the '408 Patent and that its acts were inducing infringement of the '408 Patent since at least the time of receiving the Original Complaint.

109. On information and belief, Dish's infringement has been and continues to be willful.

110. Blue Spike has been harmed by Dish's infringing activities.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 7,159,116

111. The allegations set forth in the foregoing paragraphs 1 through 110 are incorporated into this Fourth Claim for Relief.

112. On January 2, 2007, the '116 Patent was duly and legally issued by the United States Patent and Trademark Office under the title "Systems, Methods, and Devices for Trusted Transactions."

113. Blue Spike is the assignee and owner of the right, title and interest in and to the '116 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

114. Upon information and belief, Dish has and continues to directly infringe one or more claims of the '116 Patent by using, and/or providing and causing to be used products, specifically one or more apps, which by way of example include the Dish Anywhere app (the "Accused Instrumentality"). (*See* Ex. 11.)

115. The Accused Instrumentality infringed and continues to infringe claim 14 of the '116 Patent during the pendency of the '116 Patent. *See* '116 Patent Claim Chart, attached hereto as Exhibit K. Plaintiff notes that the '116 Claim Chart and analysis constitute a

preliminary and exemplary infringement analysis based on publicly available information. Plaintiff has not obtained discovery from Defendant, nor has Defendant disclosed any analysis in support of any purported non-infringement positions. Plaintiff hereby specifically reserves the right to supplement and/or amend the positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Plaintiff during the pendency of litigation, including information adduced through fact discovery, claim construction, expert discovery, and/or further analysis.

116.    The Accused Instrumentality infringed and continues to infringe claim 16 of the '116 Patent during the pendency of the '116 Patent. (*See* Exhibit K at 6.) Plaintiff notes that the '116 Claim Chart and analysis constitute a preliminary and exemplary infringement analysis based on publicly available information. Plaintiff has not obtained discovery from Defendant, nor has Defendant disclosed any analysis in support of any purported non-infringement positions. Plaintiff hereby specifically reserves the right to supplement and/or amend the positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Plaintiff during the pendency of litigation, including information adduced through fact discovery, claim construction, expert discovery, and/or further analysis.

117.    The Accused Instrumentality infringed and continues to infringe claim 17 of the '116 Patent during the pendency of the '116 Patent. (*See* Exhibit K at 6.) Plaintiff notes that the '116 Claim Chart and analysis constitute a preliminary and exemplary infringement analysis based on publicly available information. Plaintiff has not obtained discovery from Defendant,

nor has Defendant disclosed any analysis in support of any purported non-infringement positions. Plaintiff hereby specifically reserves the right to supplement and/or amend the positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Plaintiff during the pendency of litigation, including information adduced through fact discovery, claim construction, expert discovery, and/or further analysis.

118.    The Accused Instrumentality infringed and continues to infringe claim 18 of the '116 Patent during the pendency of the '116 Patent. (*See* Exhibit K at 7.) Plaintiff notes that the '116 Claim Chart and analysis constitute a preliminary and exemplary infringement analysis based on publicly available information. Plaintiff has not obtained discovery from Defendant, nor has Defendant disclosed any analysis in support of any purported non-infringement positions. Plaintiff hereby specifically reserves the right to supplement and/or amend the positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Plaintiff during the pendency of litigation, including information adduced through fact discovery, claim construction, expert discovery, and/or further analysis.

119.    The Accused Instrumentality infringed and continues to infringe claim 19 of the '116 Patent during the pendency of the '116 Patent. (*See* Exhibit K at 6.) Plaintiff notes that the '116 Claim Chart and analysis constitute a preliminary and exemplary infringement analysis based on publicly available information. Plaintiff has not obtained discovery from Defendant, nor has Defendant disclosed any analysis in support of any purported non-infringement

positions. Plaintiff hereby specifically reserves the right to supplement and/or amend the positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Plaintiff during the pendency of litigation, including information adduced through fact discovery, claim construction, expert discovery, and/or further analysis.

120.    Upon information and belief, since at least the time of receiving the Original Complaint, Dish has induced and continues to induce others to infringe at least claims 14 and 16–19 of the '116 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Dish's partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 14 and 16–19 of the '116 Patent.

121.    In particular, Dish's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities. On information and belief, the Dish has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Dish has had actual knowledge of the '116 Patent and that its acts were inducing infringement of the '116 Patent since at least the time of receiving the Original Complaint.

122.    On information and belief, Dish's infringement has been and continues to be willful.

123.    Blue Spike has been harmed by Dish's infringing activities.

## <u>COUNT V – INFRINGEMENT OF U.S. PATENT NO. 8,538,011</u>

124.    The allegations set forth in the foregoing paragraphs 1 through 123 are incorporated into this Fifth Claim for Relief.

125.    On September 17, 2013, the '011 Patent was duly and legally issued by the United States Patent and Trademark Office under the title "Systems, Methods, and Devices for Trusted Transactions."

126.    Blue Spike is the assignee and owner of the right, title and interest in and to the '011 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

127.    Upon information and belief, Dish has and continues to directly infringe one or more claims of the '011 Patent by using, and/or providing and causing to be used products, specifically one or more apps, which by way of example include the Dish Anywhere app (the "Accused Instrumentality").   (*See* Ex. 11.)

128.    The Accused Instrumentality infringed and continues to infringe claim 35 of the '011 Patent during the pendency of the '011 Patent. *See* '011 Patent Claim Chart, attached hereto as Exhibit L. Plaintiff notes that the '011 Claim Chart and analysis constitute a preliminary and exemplary infringement analysis based on publicly available information. Plaintiff has not obtained discovery from Defendant, nor has Defendant disclosed any analysis in support of any purported non-infringement positions. Plaintiff hereby specifically reserves the right to supplement and/or amend the positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Plaintiff during the pendency of litigation, including information adduced through fact discovery, claim construction, expert discovery, and/or further analysis.

129.    Upon information and belief, since at least the time of receiving the Original Complaint, Dish has induced and continues to induce others to infringe at least claim 35 of the '011 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Dish's partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 35 of the '011 Patent.

130.    In particular, Dish's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities. On information and belief, the Dish has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Dish has had actual knowledge of the '011 Patent and that its acts were inducing infringement of the '011 Patent since at least the time of receiving the Original Complaint.

131.    On information and belief, Dish's infringement has been and continues to be willful.

132.    Blue Spike has been harmed by Dish's infringing activities.

## COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 9,021,602

133.    The allegations set forth in the foregoing paragraphs 1 through 132 are incorporated into this Sixth Claim for Relief.

134.    On April 28, 2015, the '602 Patent was duly and legally issued by the United States Patent and Trademark Office under the title "Data Protection Method and Device."

135.    Blue Spike is the assignee and owner of the right, title and interest in and to the '602 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

136.    Upon information and belief, Dish has and continues to directly infringe one or more claims of the '602 Patent by selling, offering for sale, using, and/or providing and causing to be used products and/or services, specifically one or more Hopper, Hopper Duo, Hopper with Sling, Hopper 3, Wally, and/or Joey Receivers (the "Accused Instrumentalities").  (*See* Ex. 1.)

137.    Upon information and belief, the Accused Instrumentalities perform a method for accessing functionality provided by an application software.

138.    The Accused Instrumentalities infringe and continues to infringe claim 1 of the '602 Patent during the pendency of the '602 Patent.  *See* '602 Patent Claim Chart, attached hereto as Exhibit M.  Plaintiff notes that the '602 Claim Chart and analysis constitute a preliminary and exemplary infringement analysis based on publicly available information. Plaintiff has not obtained discovery from Defendant, nor has Defendant disclosed any analysis in support of any purported non-infringement positions.  Plaintiff hereby specifically reserves the right to supplement and/or amend the positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Plaintiff during the pendency of litigation, including information adduced through fact discovery, claim construction, expert discovery, and/or further analysis.

139.    The Accused Instrumentalities infringe and continues to infringe claim 5 of the '602 Patent during the pendency of the '602 Patent.  (*See* Exhibit M at 7-8.) Plaintiff notes that the '602 Claim Chart and analysis constitute a preliminary and exemplary infringement analysis based on publicly available information.  Plaintiff has not obtained discovery from Defendant, nor has Defendant disclosed any analysis in support of any purported non-infringement positions.  Plaintiff hereby specifically reserves the right to supplement and/or amend the

positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Plaintiff during the pendency of litigation, including information adduced through fact discovery, claim construction, expert discovery, and/or further analysis.

140.    The Accused Instrumentalities infringe and continues to infringe claim 8 of the '602 Patent during the pendency of the '602 Patent. (*See* Exhibit M at 7-8.) Plaintiff notes that the '602 Claim Chart and analysis constitute a preliminary and exemplary infringement analysis based on publicly available information. Plaintiff has not obtained discovery from Defendant, nor has Defendant disclosed any analysis in support of any purported non-infringement positions. Plaintiff hereby specifically reserves the right to supplement and/or amend the positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Plaintiff during the pendency of litigation, including information adduced through fact discovery, claim construction, expert discovery, and/or further analysis.

141.    Upon information and belief, since at least the time of receiving the Original Complaint, Dish has induced and continues to induce others to infringe at least claims 1, 5, and 8 of the '602 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Dish's partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 1, 5, and 8 of the '602 Patent.

142.    In particular, Dish's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities.  On information and belief, the Dish has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Dish has had actual knowledge of the '602 Patent and that its acts were inducing infringement of the '602 Patent since at least the time of receiving the Original Complaint.

143.    On information and belief, Dish's infringement has been and continues to be willful.

144.    Blue Spike has been harmed by Dish's infringing activities.

## COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 9,104,842

145.    The allegations set forth in the foregoing paragraphs 1 through 144 are incorporated into this Seventh Claim for Relief.

146.    On August 11, 2015, the '842 Patent was duly and legally issued by the United States Patent and Trademark Office under the title "Data Protection Method and Device."

147.    Blue Spike is the assignee and owner of the right, title and interest in and to the '842 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

148.    Upon information and belief, Dish has and continues to directly infringe one or more claims of the '842 Patent by selling, offering for sale, using, and/or providing and causing to be used products and/or services, specifically one or more Hopper, Hopper Duo, Hopper with Sling, Hopper 3, Wally, and/or Joey Receivers (the "Accused Instrumentalities").  (*See* Ex. 1.)

149.    Upon information and belief, the Accused Instrumentalities perform a method for accessing functionality provided by an application software.

150.     The Accused Instrumentalities infringe and continues to infringe claim 1 of the '842 Patent during the pendency of the '842 Patent. *See* '842 Patent Claim Chart, attached hereto as Exhibit N. Plaintiff notes that the '842 Claim Chart and analysis constitute a preliminary and exemplary infringement analysis based on publicly available information. Plaintiff has not obtained discovery from Defendant, nor has Defendant disclosed any analysis in support of any purported non-infringement positions. Plaintiff hereby specifically reserves the right to supplement and/or amend the positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Plaintiff during the pendency of litigation, including information adduced through fact discovery, claim construction, expert discovery, and/or further analysis.

151.     Upon information and belief, since at least the time of receiving the Original Complaint, Dish has induced and continues to induce others to infringe at least claim 1 of the '842 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Dish's partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '842 Patent.

152.     In particular, Dish's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities. On information and belief, the Dish has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Dish has had actual knowledge of the '842 Patent and that its acts

were inducing infringement of the '842 Patent since at least the time of receiving the Original Complaint.

153.    On information and belief, Dish's infringement has been and continues to be willful.

154.    Blue Spike has been harmed by Dish's infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Blue Spike demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Blue Spike demands judgment for itself and against Dish as follows:

A.    An adjudication that Dish has infringed the '246, '295, '408, '116, '011, '602, and '842 Patents;

B.    An award of damages to be paid by Dish adequate to compensate Blue Spike for Dish's past infringement of the '246, '295, '408, '116, '011, '602, and '842 Patents, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.    A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Blue Spike's reasonable attorneys' fees; and

D.    An award to Blue Spike of such further relief at law or in equity as the Court deems just and proper.

Dated: October 12, 2018

DEVLIN LAW FIRM LLC

/s/ Timothy Devlin
Timothy Devlin (No. 4241)
James Lennon (No. 4570)
1306 N. Broom St., 1st Floor
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Plaintiff* Blue Spike LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on October 12, 2018.

/s/ Timothy Devlin
Timothy Devlin